1  Chiharu G. Sekino (SBN 306589)
   **SHEPHERD, FINKELMAN, MILLER**
2  **& SHAH, LLP**
   401 West A Street, Suite 2550
3  San Diego, CA 92101
   Phone: (619) 235-2416
4  Facsimile: (866) 300-7367
   csekino@sfmslaw.com
5
   *Counsel for Plaintiffs, on behalf of themselves*
6  *and all others similarly situated*

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10                      SOUTHERN DIVISION

11
   | MELISSA SANTICH and KEITH        | Case No. **'17 CV0540 DMS RBB** |
12 | BLACKMER, on behalf of themselves |                                 |
   | and all others similarly situated,|                                 |
13 |                                   |                                 |
14 |              Plaintiffs,          |                                 |
   |                                   | **CLASS ACTION COMPLAINT**      |
15 |              v.                   |                                 |
16 |                                   |                                 |
17 | GNC HOLDINGS, INC.,               |                                 |
   |              Defendant.           | JURY TRIAL DEMANDED             |
18

---

                                1                CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT

Plaintiffs, Melissa Santich ("Santich") and Keith Blackmer ("Blackmer") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, allege, on personal knowledge as to all facts related to themselves and upon information and belief (based on the investigation of counsel) as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Defendant, GNC Holdings, Inc. ("Defendant" or "GNC"), is in the business of selling nutritional supplements. In so doing, it oversees the operation of hundreds of stores throughout the United States, including numerous stores throughout California.

2. For a number of years, GNC offered customers the opportunity to join its Gold Card Program ("Program"). In exchange for an annual payment of $15, Program members received a Gold Card, which entitled them to receive a substantial discount on the purchase of in-store items for a one-year period. The Program was very popular with GNC's customers, with more than 7 million individuals participating in the Program nationwide. In December 2016, GNC unilaterally discontinued the Program, resulting in Plaintiffs, and millions of other members of the Class (defined below), being unable to receive the benefits of the Program for the full one-year period contemplated when they paid to join the Program.

3. Plaintiffs and the members of the Class have been damaged and suffered an ascertainable loss as a result of GNC's conduct.

4. As set forth more fully below, GNC's conduct constitutes a breach of contract, as well as violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") and the California Legal Remedies Act, Cal., Civ. Code §§1750-1784 ("CLRA").

5. Though this action, Plaintiffs seek actual damages, statutory damages, attorneys' fees and costs, and all other relief available to the Class as a result of GNC's unlawful conduct.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which Class members and the Defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District pursuant to 28 U.S.C. §1391 because Santich resides in this District and GNC transacts substantial business in this District and, thus, is subject to personal jurisdiction in this District. Additionally, GNC has advertised in this District and sold Gold Cards through the Program in this District such that a substantial part of the events and/or omissions giving rise to the claims occurred within this District.

8. This Court has personal jurisdiction over Defendant. Defendant owns and operates stores in this District and sold thousands of Gold Cards in this District,

including to Santich.  As such, Defendant has conducted substantial business in this District.

## THE PARTIES

9. Santich is a resident and citizen of Lakeside, San Diego County, California.

10. Blackmer is a resident and citizen of Sherman Oaks, Los Angeles County, California.

11. GNC is a Delaware corporation which maintains its headquarters and principal place of business in Pittsburgh, Pennsylvania.  GNC, thus, is a citizen of both Delaware and Pennsylvania.  GNC holds itself out as being the largest supplement provider in the world.

## STATEMENT OF FACTS

12. This class action is brought against GNC for the benefit and protection of Program members, who did not receive the full one-year benefit of their Gold Card at the time GNC discontinued its Program in December 2016.

13. GNC holds itself out as being a leading global specialty retailer of health and wellness products, including vitamins, minerals, herbal supplement products, sports nutrition products and diet products.  GNC trades on the New York Stock Exchange and oversees the operation of thousands of stores nationwide.

14. For many years, GNC offered customers the opportunity to join its Program, which provided them with a Gold Card entitling them to receive a substantial discount on the purchase of in-store items.  In order to join the Program, customers were required to pay $15 for an annual membership.  The Program was

successful and well received by GNC customers, with millions of Program members actively participating nationwide.

15. In December 2016, GNC unilaterally discontinued the Program, resulting in Plaintiffs and millions of other members of the Class being unable to receive the benefits of the Program for the full one-year period contemplated when they purchased their Gold Cards.

16. Remarkably, GNC continued to sell Gold Cards until just a few weeks prior to the discontinuation of the Program, while having full knowledge that purchasers would not receive the benefit of the Program.

**Plaintiffs' Experiences**

17. Santich has been purchasing nutritional supplements from GNC on a regular basis for at least the last 5 years.

18. In or about 2015, Santich was made aware of GNC's Program. The Program was of interest to Santich because she determined that the substantial discount she would receive on purchases would more than make up for the $15 annual cost to join the Program.

19. In or about May 2016, Santich decided to purchase a Program membership and paid $15 for a Gold Card purchased through GNC's website.

20. Blackmer has been purchasing nutritional supplements from GNC on a regular basis since approximately 2012.

21. In or about 2012, Blackmer was made aware of GNC's Program. The Program was of interest to Blackmer because he determined that the substantial

discount he would receive on purchases would more than make up for the $15 annual cost to join the Program.

22. In or about May 2016, Blackmer decided to purchase a Program membership and paid $15 for a Gold Card at the GNC store in the Westfield Fashion Square Mall in Sherman Oaks, CA.

23. In December 2016, GNC unilaterally discontinued the Program, resulting in Plaintiffs not having the benefit of their Gold Cards for approximately five months, or approximately 40% of their annual membership period.

24. When they purchased their Gold Card in May 2016, Plaintiffs understood that GNC had promised that their membership in the Program would be valid for a full one-year period, and they relied on that representation. Furthermore, GNC's representations regarding the length of the membership was material to Plaintiffs, as it would be to any reasonable consumer when determining to purchase a membership.

25. As a result of GNC's unilateral discontinuance of the Program, Plaintiffs suffered actual damages and loss, at a minimum, for the *pro rata* portion of their memberships that they were unable to use.

## CLASS ACTION ALLEGATIONS

26. Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following classes (collectively, the "Class"):

**Nationwide Class**:
All persons who purchased a GNC Program membership in the United States after December 1, 2015.

**California Class**:
All persons who purchased a GNC Program membership in California after December 1, 2015.

27. Specifically excluded from the Class are: (a) Defendant, its officers, directors, agents, trustees, corporations, trusts, representatives, employees, principals, partners, joint ventures, or entities controlled by Defendant; (b) any person who has suffered personal injury or is alleged to have suffered personal injury as a result of the purchase of a Program membership; (c) Plaintiffs' counsel; and (d) the Judge to whom this case is assigned.

28. **Numerosity/Impracticability of Joinder.** The members of the Class are so numerous that joinder of all members is impracticable. The proposed Class includes millions of members. The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody, and control, or otherwise obtained through reasonable means.

29. **Typicality.** The representative Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent. Plaintiffs and all members of the Class purchased Program memberships and did not receive the benefit of the one-year membership they were promised. Plaintiffs and all members of the Class, thus, have sustained damages arising out of the same wrongful course of conduct. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

30. **Commonality and Predominance.** Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether GNC represented that the Program membership would be for a period of one year;

    b. Whether GNC, as to Plaintiffs and the Class, discontinued the Program prior to the expiration of a one-year period.

    c. Whether GNC breached its contracts with Plaintiffs and the Class;

    d. Whether GNC engaged in a pattern of fraudulent, deceptive, and misleading conduct targeting the public through the marketing, advertising and sale of memberships to the Program;

    e. Whether Defendant made material misrepresentations of fact or omitted to state material facts to Plaintiffs and the Class regarding the marketing, advertising and sale of memberships to the Program;

    f. Whether GNC's false and misleading statements of fact and concealment of material facts regarding membership to the Program were intended to deceive the public;

    g. Whether Plaintiffs and the members of the Class have sustained loss and incurred damages as a result of Defendant's acts and omissions, and the proper measure thereof; and

    h. Whether such conduct violates statutory and common law

prohibitions against such conduct, as detailed more fully below.

31. **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously. Plaintiffs are members of the Class and do not have interests antagonistic to, or in conflict with, the other members of the Class.

32. **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since, among other things, individual litigation and/or joinder of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by individual Class members as a result of Defendant's wrongful conduct alleged herein are too small to warrant the expense of individual litigation. The likelihood of individual Class members prosecuting their own separate claims is remote and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions and individualized litigation would present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiffs do not foresee any difficulty in the management of this litigation that would preclude its maintenance as a class action. In addition, Defendant has acted or refused to act on grounds

generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

33. Adequate notice can be given to Class members by directly using information maintained in Defendant's records, or through notice by publication.

## COUNT I
**Asserted on Behalf of the Nationwide Class and, Alternatively, the California Class**
**(Breach of Contract)**

34. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

35. GNC entered into a contract with Plaintiffs and the members of the Class when it sold Gold Cards to enrollees of the Program.

36. Plaintiffs and the members of the Class complied with all of their obligations under the terms of the contract.

37. A material term of that contract was that the Program membership would be valid for a one-year period.

38. GNC breached its contract with Plaintiffs and the members of the Class when it discontinued the Program prior to the expiration of the one-year membership period.

39. As a result of GNC's breach, Plaintiffs and the members of the Class have been damaged.

## COUNT II
**Violation of the California Unfair Competition Law,**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")**
**(On Behalf of the California Class)**

40. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

41. Plaintiffs bring this claim on behalf of themselves and the California Class.

42. The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

43. Defendant's conduct, as described herein, was and is in violation of the UCL. Defendant's conduct violates the UCL in at least the following way, by representing that the Program membership term was valid for a one-year period.

44. Defendant's misrepresentations and omissions alleged herein caused Plaintiffs and the California Class to make their purchases of Defendant's Program. Absent those misrepresentations and omissions, Plaintiffs and the California Class would not have purchased Defendant's Program.

45. Defendant has deceived Plaintiffs and the California Class.

46. Plaintiffs and the California Class have suffered injury in fact including lost money or property as a result of Defendant's misrepresentations and omissions.

47. By engaging in the above described acts and practices, Defendant has committed one or more acts of unfair competition within the meaning of the UCL. Specifically, by failing to disclose and concealing that the Program term was to be unilaterally cancelled before the completion of the one-year period, Defendant has engaged in unfair conduct within the meaning of the UCL. Moreover, the nature of

Defendant's misconduct has been consistently recognized as unfair conduct within the meaning of the UCL as it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and injurious to consumers.

48. Defendant's business acts and practices are fraudulent within the meaning of the UCL. Specifically, as an entity with exclusive knowledge regarding the Program terms, Defendant had a duty to disclose material facts regarding the Program memberships; namely, that they would not be valid for a one-year period. Plaintiff and the California Class reasonably expected that Defendant would disclose any material facts that a reasonable consumer would consider important in deciding whether to purchase the Program membership. Plaintiffs and the California Class also reasonably expected that Defendant would not sell a Program with a one-year membership terms that was, in fact, less than one year in length. By failing and refusing to disclose this material information regarding the Program membership term, Defendant has engaged in actionable, fraudulent conduct within the meaning of the UCL.

49. Plaintiffs request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and the California Class any money GNC acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203.

### COUNT III
**Violation of California Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On behalf of the California Class)**

50. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

51. Plaintiffs bring their claims on behalf of themselves and the members of the California Class who are "consumers" as defined in the CLRA.

52. The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

53. Defendant's Program is a "good" as defined in Cal. Civ. Code § 1761(a).

54. As alleged herein, Defendant made numerous representations and omissions concerning the Program.

55. In purchasing the Program, Plaintiffs and the California Class were deceived by Defendant's failure to disclose that the membership term would not be valid for the one-year period.

56. Defendant's conduct, as described herein, was and is in violation of the CLRA. Defendant's conduct violates at least the following enumerated CLRA provisions:

(a) California Civil Code Section 1770(a)(5), in that Defendant represented that its Program had characteristics, uses, or benefits which it does not have; and

(b) California Civil Code Section 1770(a)(9), in that Defendant advertised its Program with the intent not to sell them as advertised.

57. Plaintiffs and the California Class have suffered injury in fact and actual damages resulting from Defendant's material omissions and

misrepresentations, including paying for a one-year membership that was not valid for a one-year period.

58. The facts concealed and omitted by Defendant are material in that a reasonable consumer, like Plaintiffs and the members of the California Class, would have considered the facts regarding the Program membership; namely, that they would not be valid for the one-year period.

59. In accordance with Cal. Civ. Code § 1780(a), Plaintiffs and the California Class seek injunctive relief for Defendant's violations of the CLRA.

60. In accordance with Cal. Civ. Code § 1782(a) & (d), Plaintiffs are serving Defendant with a notice and demand contemporaneous with the filing of this Complaint. Plaintiffs reserve the right to amend and seek damages under the CLRA in the future. Attached as Exhibit A is Plaintiffs' CLRA notice letter.

## COUNT IV
**False and Misleading Advertising,
Cal. Bus. & Prof. Code §§ 17500,** *et seq.*
**(On behalf of the California Class)**

61. Plaintiffs repeat and reallge the allegations above as if fully set forth herein.

62. Plaintiffs bring this claim on behalf of themselves and the California Class for violations of the California Business & Professions Code § 17500, which states in relevant part:

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating

> thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or . . . any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, . . . or . . . not to sell that personal property . . . as so advertised.

> Cal. Bus. & Prof. Code § 17500.

63. Defendant has engaged in the advertising and marketing alleged herein with an intent to directly or indirectly induce consumers' to purchase Gold Cards.

64. Defendant's representations regarding the characteristics, uses and benefits of the Program were false, misleading and deceptive.

65. The false and misleading representations were intended to, and did, deceive reasonable consumers, including Plaintiffs and the California Class.

66. The false and misleading misrepresentations and omissions were material to Plaintiffs and the California Class in connection with their respective decisions to purchase Gold Cards.

67. Plaintiffs and the California Class relied on the false and misleading representations and omissions, which played a substantial part in influencing their decision to purchase Gold Cards.

68. At the time it made and disseminated the representations alleged herein, Defendant knew, or should have known, that the statements were untrue or misleading, and acted in violation of California Business and Professions Code §§ 17500, *et seq*.

69. Plaintiffs, on behalf of themselves and the California Class, seek restitution, disgorgement, injunctive relief, and all other relieved provided under §§ 17500, *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the members of the Class, pray for judgment and relief as follows for the above causes of action:

A. An Order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B. All recoverable compensatory and other damages sustained by Plaintiffs and the Class;

C. Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class and in the maximum amount permitted by applicable law;

D. Statutory pre-judgment and post-judgment interest on any amounts;

E. Payment of reasonable attorneys' fees and costs; and

F. Such other and further relief as the Court may deem necessary or appropriate.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

Dated: March 17, 2017

Respectfully submitted,

By:  */s/ Chiharu Sekino*

Chiharu G. Sekino (SBN 306589)
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
401 West A Street
Suite 2550
San Diego, CA 92101
Phone: (619) 235-2416
Facsimile: (866) 300-7367
csekino@sfmslaw.com

James C. Shah (SBN 260435)
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (866) 300-7367
jshah@sfmslaw.com

*Counsel for Plaintiffs, on behalf of themselves and all others similarly situated*

# EXHIBIT A

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP

*Attorneys at Law*

35 East State Street ■ Media, PA 19063
Telephone: 610-891-9880 ■ Fax: 610-891-9883
www.sfmslaw.com



**JAMES C. SHAH‡**
jshah@sfmslaw.com

March 17, 2017

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

GNC Holdings, Inc.
300 Sixth Avenue
Pittsburgh, PA 15222

      Re:    **Melissa Santich and Keith Blackmer v. GNC Holdings Inc.**

Dear Sir or Madam:

We represent Melissa Santich and Keith Blackmer (collectively, "Claimants"), individuals who purchased GNC Gold Cards, which entitled them to receive substantial discount on purchases of in-store items for a one-year period. In December 2016, GNC Holdings, Inc. ("GNC"), unilaterally discontinued the Gold Card Program ("Program"), resulting in Claimants being unable to use the benefits of the Program they purchased for the full one-year period.

Please take notice that it has come to the attention of consumers, including Claimants, who have purchased GNC Gold Cards, that GNC has engaged in deceptive, fraudulent and misleading consumer practices in connection with the marketing and sale of the Program, in violation of the Consumers Legal Remedies Act ("CLRA"), Cal.Civ.Code § 1750, *et seq*. Specifically, consumers, including Claimants, allege that GNC has engaged in unfair methods of competition and unfair or deceptive acts or practices by marketing and selling the Program as having a one-year membership term when, in fact, the term was valid for a less than a one-year period.

As a result of the unilateral cancelation of the Program, Claimants and consumers are not able to utilize the full value of the Program they purchased. Based upon our investigation, and the numerous experiences of consumers, we believe and allege that the Program advertised and sold by GNC does not perform as claimed. Claimants further believe and allege that GNC knew that, contrary to its marketing and sales practices, the Program membership would not be valid for a one-year period.

Claimant and other consumers specifically allege that GNC violated the following sections of Cal.Civ.Code § 1770:

‡Admitted to practice law in CA, NJ, PA and WI

CALIFORNIA ■ CONNECTICUT ■ FLORIDA ■ NEW JERSEY ■ PENNSYLVANIA ■ WISCONSIN



GNC Holdings, Inc.
March 17, 2017
Page 2



- (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have; and

- (a)(9) Advertising goods or services with the intent not to sell them as advertised.

We believe that GNC knew the Program term would not be valid for the one-year period, and that GNC has acted affirmatively to conceal this material information. Additionally, we believe that GNC should have disclosed this information, as a reasonable consumer would consider these facts when deciding to purchase a Program membership. Such conduct is clearly violative of, *inter alia*, the CLRA.

We have sent this letter directly to GNC in order to fully comply with the requirements of Cal.Civ.Code § 1782. We, of course, hope that GNC will act immediately to rectify this situation by reimbursing all Program members the pro rata amount of their memberships they were unable to use. We stand ready to discuss a reasonable resolution of this matter on the terms outlined above or on similar terms acceptable to Claimants and similarly situated consumers.

If you have any questions, require any additional information, or would like to discuss these matters, please do not hesitate to contact me.

Very truly yours,

James C. Shah